**In the United States District Court
for the District of Kansas**

───────────

Case No. 22-cv-02329-TC

───────────

LINDA WERNER,

*Plaintiff*

v.

GERALD MCGONIGALE,

*Defendant*

───────────

**MEMORANDUM AND ORDER**

Linda Werner slipped and fell in Terry Woolsoncroft's shower. Doc. 37 at ¶ 3.a. She sued Woolsoncroft's estate, arguing that his negligence caused her to fall. Doc. 37 at ¶ 4.a.i.–viii. The Estate moves for summary judgment, Doc. 33, and to strike one of Werner's affidavits, Doc. 39. For the following reasons, both motions are denied.

**I**

**A**

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

1

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okl.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga, Okl.*, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

## B

Werner lived at Woolsoncroft's home as his volunteer caretaker, since Woolsoncroft was disabled. Doc. 33 at ¶ 26, Doc. 34 at 4, ¶ 4; Doc. 38 at 5, ¶ 3. Werner had a separate bedroom and bathroom with a bathtub and removable hand shower. Doc. 34 at 4, ¶ 5. After several months, that shower stopped working. *Id.* at 4, ¶ 6. Werner initially used a sink to wash her hair. *Id.* at 4, ¶ 7. Woolsoncroft then suggested that she use a shower in the basement. *Id.* Werner had not visited the basement before and Woolsoncroft told her nothing about the shower itself. Doc. 33 at ¶ 7; Doc. 34 at 4, ¶ 10.

The basement shower was "crudely constructed, with no door, [and] walls of rusted corrugated iron." Doc. 34 at 5, ¶ 14. Its floor "was…concrete partially covered by tiles of vinyl or similar material." *Id.* Werner started the shower and stepped onto the mat. Doc. 34 at 6, ¶ 19. She then "turned her upper body to reach for shampoo" and fell when the mat "slid from under her." *Id.* at 6, ¶¶ 19, 22.

As she fell, Werner "struck her neck on [a] chair in the shower" and "thinks she struck her head on the floor." Doc. 34 at 6, ¶ 23; Doc.

2

38 at 8, ¶ 23. After her fall, she retrieved loose tiles from the shower and showed them to Woolsoncroft. Doc. 34 at 7, ¶ 26. At this time, Werner "discovered…an open drain underneath the mat. There was no cover on the drain." Doc. 34 at 7, ¶ 27; Doc. 38 at 8, ¶ 27.[1] Woolsoncroft told Werner he had not been in the basement shower in over a year. Doc. 33 at ¶ 6, Doc. 34 at 4, ¶ 8.

Werner sued Woolsoncroft's estate alleging negligence. Doc. 37 at 4.a.iii. The Estate, represented by special administrator Gerald McGonigale, seeks summary judgment. Doc. 33.

## II

The only argument the Estate makes is that Woolsoncroft lacked notice of a dangerous condition. Its motion for summary judgment is denied because there is a genuine dispute of material fact about whether Woolsoncroft had actual or constructive notice of a dangerous condition in his residence.

Kansas law governs the parties' dispute. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also* Doc. 37 at ¶ 1.d. (stipulating to the same). If Kansas's law is ambiguous, a federal district court must look to the Kansas Supreme Court's rulings. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citing *High Plains Nat. Gas Co. v. Warren Petroleum Co.*, 875 F.2d 284, 288 (10th Cir. 1989)).

---

[1] This fact also appears in an affidavit filed with Werner's motion opposing summary judgment. Doc. 34-4; *see also* Doc. 39 at 3. The Estate asks that the affidavit be stricken as a sham. Doc. 39; *see also L. Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1169–70 (10th Cir. 2009) (explaining the concept of a sham affidavit and that such affidavits may be ignored for purposes of summary judgment). But Werner's affidavit does not constitute a sham. At most, it contradicts her testimony once, and that contradiction is not material to resolving the current summary judgment motion. *Id.* at 5 ("Plaintiff described her discussions with Mr. Woolsoncroft about purchasing a new mat and calling a plumber to have occurred the next day, not the day of Plaintiff's fall."); *see also Mohawk*, 577 F.3d at 1169–70 (sham affadavits cannot be stricken unless they contradict sworn testimony); *contra* Doc. 41 at 1 ("Defendant does not need to show that Plaintiff directly contradicted her prior testimony."). And Werner's other statements clarify her deposition testimony without contradicting it by, for example, expanding on the condition of the shower. *See* Doc. 34-4; *contra* Doc. 39 at 6. Accordingly, the Estate's motion to strike, Doc. 39, is denied.

And "if no such rulings exist, [it] must endeavor to predict how the high court would rule." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006)).

Kansas landowners and homeowners must exercise reasonable care. *Wrinkle v. Norman*, 301 P.3d 312, 313 (Kan. 2013) (citing *Jones v. Hansen*, 867 P.2d 303 (Kan. 1994)). They fail to do so if they maintain dangerous conditions on their land or in their homes. *Cunningham v. Braum's Ice Cream & Dairy Stores*, 80 P.3d 35, 38 (Kan. 2003) (surveying Kansas's premises liability framework). Even so, they must know that a dangerous condition exists before they can address it. So they are usually not liable unless they knew or should have known of a condition. *Brock v. Richmond-Berea Cemetery Dist.*, 957 P.2d 505, 511 (Kan. 1998); *D.W. v. Bliss*, 112 P.3d 232, 241 (Kan. 2005). In this case, Werner could show that Woolsoncroft knew or should have known of the dangerous shower.[2]

Consider the shower mat, which covered much of the shower floor. *See* Doc. 33 at ¶ 15; Doc. 34 at 2, ¶ 15. The parties cannot agree who placed the mat and when he or she did so, even though they agree that Woolsoncroft purchased shower mats before. *See* Doc. 34 at 14; Doc. 38 at 13. The Estate implies that Woolsoncroft did not place a shower mat in the basement shower, Doc. 38 at 13, but Werner's evidence—which must be credited at this stage of the proceedings—could persuade a jury that he did. For instance, Woolsoncroft had been in the basement before, though "rarely…in recent years due to his disability." Doc. 34 at 4, ¶ 8; Doc. 38 at ¶ 8. He kept the basement locked, Doc. 34 at 4, ¶ 9, presumably preventing others from entering. And when he discussed the basement shower mat with Werner after her accident, he was not surprised that it existed. Doc. 34 at 7, ¶ 26; Doc.

---

[2] The "mode-of-operation" rule does not apply. *Contra* Doc. 34 at 11. It is only "a very limited exception" that makes proof of notice unnecessary "if the proprietor of a business, simply from [the business's] mode of operation, could reasonably anticipate that hazardous conditions would regularly arise from a third party's actions." *Brock v. Richmond-Berea Cemetery Dist.*, 957 P.2d 505, 513 (Kan. 1998). And it does not apply here because Woolsncroft was not a business. *See id.*; *but see Kimes v. Unified Sch. Dist. No. 480, Seward Cnty., State of Kan.*, 934 F. Supp. 1275, 1280 (D. Kan. 1996) (treating the mode-of-operation rule as separate from cases where "the dangerous condition was created or maintained by the defendant").

38 at 8, ¶ 26. Given these facts, a jury could conclude that Woolsoncroft knew or should have known that the shower was more dangerous than it appeared. He had an opportunity to observe the shower, as well as to appreciate the danger posed by the mat and hidden drain. *See, e.g.*, *Johnson v. Farha Vill. Supermarkets, Inc.*, 491 P.2d 904, 907 (Kan. 1971) ("It is arguable that [one of appellee's employees] had a view of the area where appellant fell and could have [s]een the loose grapes…[s]ome of [which] could have been mashed by other customers[.]").

Werner could tell a similar story about the loose tiles. She agrees that Woolsoncroft did not actually know about them. Doc. 33 at ¶ 20. But she can still maintain that he should have. At some point, he used the shower and basement. *See* Doc. 33 at ¶ 6. On another occasion, he went "into the basement … to get tax information … by 'scooting,'" Doc. 34 at 3, ¶¶ 23–24, even after he "lost part of one foot to diabetes," *id.* at 3, ¶ 22. There may have been other visits, too, because somebody arranged a hose to drain fluid over the shower tiles. Doc. 38 at 13 (asserting that there is no evidence from which one could infer that the fluid loosened the tiles). Though Woolsoncroft had limited opportunities to investigate the condition of the shower, Werner's evidence, if accepted, could persuade a jury that a few opportunities should have been enough. *See* Doc. 34 at 14.

Reading the facts in Werner's favor reveals that she could prove notice. According to Werner's account, Woolsoncroft covered a sloped shower floor with a slick mat. He used that shower to dispose of fluid from a hose, which may have loosened the shower's tiles. However long the shower took to fall into disrepair, it is not impossible that Woolsoncroft should have known about it.[3] *See Albanese v. Edwardsville Mobile Home Vill., Inc.*, 529 P.2d 163, 168 (Kan. 1974) (agreeing that constructive notice existed where defendants perceived a

---

[3] The Estate's motion contains general references to other arguments—for example, that Woolsoncroft "…did not breach any duty by not warning the Plaintiff." Doc. 33 at 6. But those arguments are part and parcel of its lack-of-notice argument. *Id.* at 6–9 (explaining that there was no duty to warn because Woolsoncroft had neither actual nor constructive notice of the dangerous situation). To the extent other arguments were intended, they are denied as insufficiently developed. *See*, *e.g.*, *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (a court need not consider arguments that a litigant has not raised).

threat of gradual erosion); *cf. Schmelzle v. Wal-Mart, Inc.*, 230 F. Supp. 2d 1254, 1260 (D. Kan. 2002) (granting summary judgment on a Kansas negligence claim where the defendant thought it had fixed a hazard that reappeared).

### III

For the foregoing reasons, the Estate's Motion for Summary Judgment, Doc. 33, and Motion to Strike, Doc. 39, are DENIED.

It is so ordered.

Date: January 19, 2024               s/ Toby Crouse
                                     Toby Crouse
                                     United States District Judge